# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Ruth Ann Cooper, DPM,

        Plaintiff,                      Case No. 1:16cv945

        v.                               Judge Michael R. Barrett

NeilMed Pharmaceuticals, Inc.,

        Defendant.

## OPINION & ORDER

This matter is before the Court upon Defendant NeilMed Pharmaceuticals, Inc.'s Motion to Dismiss. (Doc. 14). Plaintiff Ruth Ann Cooper, D.P.M. filed a Response in Opposition. (Doc. 17). Defendant filed a Reply. (Doc. 18).

## I. BACKGROUND

Plaintiff's Complaint centers on Defendant's alleged practice of sending unsolicited facsimiles. According to the Complaint, NeilMed Pharmaceuticals ("NeilMed") manufactures and sells medical products, including nasal/sinus rinses, decongestants, ear care products, and first aid products. (Doc. 1, ¶ 11). Dr. Cooper operates a medical clinic. (Id. ¶ 9). On August 24, 2016, NeilMed sent a one-page fax to Cooper, which read:

> Dear Physician and Office Staff,
>
> We would like to send you NeilMed product samples.
>
> Please fill out the form below to verify your address and confirmation for samples.
>
> . . .

> We thank you for all of you [sic] years of support.
>
> **NeilMed© Sinus Rinse© and Neilmed© Baby Care, Ear Care, and First Aid** devices have become an acceptable line of treatment for various self care for simple ailments.
>
> Thank you in advance for your timely response.
>
> Neilmed Pharmaceuticals, Inc.

(Doc. 1-1, PAGEID #16). The fax then asked: "Would you like to receive samples from NeilMed©?" and "Would you like to receive Medical Literature from NeilMed©?" (Id.) Responses were to be indicated by checking boxes. (Id.) There was also a space to update address and contact information. (Id.) The fax provided phone numbers and an email address to use to fax the form back to NeilMed. (Id.) The fax also listed the names and mobile numbers of NeilMed's executive leadership, as well as the web address, physical address and contact information for NeilMed's head office.

Cooper has brought a putative class action pursuant to the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA"). Cooper claims that NeilMed has sent unsolicited advertisements to Cooper and the class via facsimile in violation of the TCPA.

## II. ANALYSIS

### A. Motion to Dismiss

NeilMed moves to dismiss Cooper's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the failure to state a claim upon which relief can be granted.

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light

most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, legal conclusions conveyed as factual allegations do not need to be accepted as true, rather the reviewing court is allowed to draw on its own judicial experience and common sense in determining whether or not the pleader can obtain any relief based on the purported facts. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-950 (2009).

### B. Telephone Consumer Protection Act

The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA"), provides that a person may not "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). NeilMed argues that the fax it sent Cooper was not an advertisement under the TCPA.

The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The Sixth Circuit has held that under this definition "[a]n advertisement is any material that promotes the sale (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit." *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015).

Under this definition, the Sixth Circuit found that two faxes sent by a pharmacy

3

benefit manager ("Medco") to a chiropractic practice ("Sandusky") were not advertisements because they lacked the "commercial components inherent in ads." *Id*. at 222. The faxes listed drugs which were in Medco's formulary and asked Sandusky to consider prescribing these plan-preferred drugs to "help lower medication costs for [Sandusky's] patients." *Id*. at 220. The court noted that while the faxes called attention to the medications and Medco's services, there was no evidence Medco was offering to ever sell the drugs or its services to Sandusky. *Id*. at 222. The court explained that the faxes list the drugs "in a purely informational, non-pecuniary sense: to inform Sandusky what drugs its patients might prefer, based on Medco's formulary." *Id*.

The court contrasted the faxes to everyday ads which would fit within the definition of "advertisement:"

> When McDonald's runs a television ad for a new McCafé item (complete with a jingle, of course), viewers understand that McDonald's is promoting that item to the public's attention, that it is available to be bought, and that McDonald's hopes to gain a profit from it. So too when a law firm buys space in a newspaper for its logo, slogan, areas of expertise, and contact information: Readers understand that the firm is soliciting the public to pay for its services (which are available for sale) with making money in mind. And probably so too when an orthopedic-implant manufacturer sends potential buyers a fax containing a picture of its product on an invitation to a free seminar: It is drawing the relevant market's attention to its product to promote its sale (albeit indirectly).

*Id*. (citations omitted). The court found that its conclusion was bolstered by the Federal Communications Commission's rules and regulations interpreting the statute. *Id.* at 223 (citing 47 C.F.R. § 64.1200(f)(1) (defining "advertisement"); Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973 (May 3, 2006) (expounding on that definition)). The court recognized that there is a circuit split on whether to defer to the Commission's

interpretation, but explained "if we needed to rely on them, [the rules] only help Medco's case that these faxes are not ads." *Id.* The court explained that according to the Commission, faxes "that contain only information, such as industry news articles, legislative updates, or employee benefit information," are not advertisements under the Act. *Id.* (quoting 71 Fed. Reg. at 25973). The court also noted that under the Commission's interpretation, one factor to be considered is whether the fax's "primary purpose is informational, rather than to promote commercial products." *Id.* The court concluded that because the faxes sent by Medco only contained information and did not seek to promote products or services to make a profit, the Commission's interpretation confirmed that the faxes were not advertisements under the TCPA. *Id.*

The court also found that its conclusion was not contrary to the Seventh Circuit's decision in *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 685 (7th Cir. 2013):

> The person who sent the fax in *Turza* "plug[ged] the commercial availability of [his] services" by faxing his name, contact information, and areas of expertise (in addition to "mundane advice" about unrelated topics) to potential clients for "promotion[al] or marketing" reasons. *Turza*, 728 F.3d at 685-86, 688. The sender conceded that the fax was a "promotional" device, and his lawyer called it a "marketing" tool in his brief and at oral argument. *Id.* at 686-87. So the court held as a matter of law that he faxed an advertisement. That conclusion is completely consistent with our judgment in this case. The faxes in *Turza* solicited business from the public, albeit in an indirect way. The faxes at issue here solicit nothing. They don't seek to make a profit, and they seek no actual or potential commercial transaction between the parties. They don't even seek a future relationship with Sandusky (forget a commercial one). In line with *Turza*, these are not ads.

*Id.* at 224-25.

NeilMed argues that like the faxes in *Sandusky*, a fax from a pharmaceutical company about drugs, without any reference to how or where the drugs are available for purchase, is not an advertisement under the TCPA. However, in *Sandusky*, the Sixth

5

Circuit explained:

> To be sure, a fax need not be an explicit sale offer to be an ad. It's possible for an ad to promote a product or service that's for sale without being so overt, as in the free-seminar example, *see* 71 Fed. Reg. at 25973, or as in *Turza*, 728 F.3d at 688. The best ads sometimes do just that. But the fax itself must at least be an indirect commercial solicitation, or pretext for a commercial solicitation. If it's not, it's not an ad.

788 F.3d at 225. This explanation is in keeping with the FCC's interpretation of ads which include offers of free products or services:

> We conclude that facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services.

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005, 21 F.C.C.R. 3787, 3814 (April 6, 2006); *see also Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F.Supp.3d 482, 489 (W.D. Mich. 2014) (noting that "[w]e know from common experience—whether at time-share resorts or otherwise—that 'free offers' often come with strings attached" and finding a question of fact existed regarding whether a fax that invited the recipient to a free seminar was an advertisement); *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F.Supp.2d 272, 282-83 (S.D.N.Y. 2013) (explaining that a fax that requested that the recipient sign up for a free television service financed by commercials played during the news program was an advertisement because, like a free seminar, it was part of an overall campaign to sell property, goods, or services).

This Court recently applied these principles to a fax sent by a company which sells orthotics ("Foot Levelers") to a chiropractic clinic. *Swetlic Chiropractic & Rehab.*

*Ctr., Inc. v. Foot Levelers, Inc.*, 235 F. Supp. 3d 882 (S.D. Ohio 2017). The faxes advertised a free webinar, gave information on receiving free promotional material from Foot Levelers, and promoted a giveaway contest for an iPad Air and a Michael Kors clutch. *Id*. at 885. The giveaway and the registration for the webinar directed interested parties to the Foot Levelers website and the free promotional material directed interested parties to contact Foot Levelers' customer service department. *Id*.

This Court found that the fax was an advertisement under the TCPA. *Id*. at 890. The Court focused on the free point-of-sale materials from Foot Levelers:

> Promotional materials for point-of-sale stations that could be passed on to a practice's customers falls into a type of advertisement described by the Sixth Circuit as one which "draw[s] the relevant market's attention to its product to promote its sale (albeit indirectly)." *Sandusky*, 788 F.3d at 222. It also falls directly into the FCC's statement that even when a publication is offered at no cost "the products promoted within the publication are generally commercially available. . .[thus], it is reasonable to presume that such messages describe the 'quality of any property, goods, or services.'" In re Rules, 21 F.C.C. Rcd. at 3814.

*Id*. at 890.

Accordingly, this Court must determine whether NeilMed's fax offering its products for free constitutes advertising because it is an indirect commercial solicitation or a pretext for a commercial solicitation. The fax calls attention to the quality of NeilMed's products. The fax states that "**NeilMed© Sinus Rinse© and Neilmed© Baby Care, Ear Care, and First Aid** devices have become an acceptable line of treatment for various self care for simple ailments." (Doc. 1-1, PAGEID #16). NeilMed's products are "generally commercially available." NeilMed's website, which is listed in the fax, sells its products directly and also provides a store locator to find stores who carry NeilMed's products. From that standpoint, NelMed's fax is commercial in

7

nature. While NeilMed is not soliciting business from Cooper, "the fact that the recipient of the fax is not the one paying for the product does not make the proposed transaction non-commercial." *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 282 (S.D.N.Y. 2013). Like the fax offering promotional materials from Foot Levelers in *Swetlic Chiropractic*, the offer of free products is a vehicle to advertise NeilMed's products and sell those products to Cooper's patients. The Court notes that in *Sandusky*, the Sixth Circuit cautioned that "[t]he fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation." 788 F.3d at 225. Certainly there is no guarantee that Cooper's patients will purchase NeilMed's products after being handed a free sample. However, the fax from NeilMed does not resemble the kinds of faxes that have been deemed merely informational. As the FCC has explained: "facsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed.Reg. 25967–01, 25973 (May 3, 2006). Here, the fax from NeilMed is not providing any medical information, industry news, or like the fax in *Sandusky*, benefits available to patients. Instead, the fax promotes the sale of its products to Cooper's patients, albeit indirectly, by passing on free samples through Cooper.

Therefore, the Court concludes that the complaint states a plausible claim that Defendant's fax qualifies as an advertisement.

### III.    CONCLUSION

Based on the foregoing, Defendant NeilMed Pharmaceuticals, Inc.'s Motion to Dismiss (Doc. 14) is **DENIED**.

**IT IS SO ORDERED.**

                                                      */s/ Michael R. Barrett*
                                                  JUDGE MICHAEL R. BARRETT