**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (AT CINCINNATI)**

| | | |
|---|---|---|
| RUTH ANN COOPER, D.P.M., individually and as the representative of a class of similarly-situated persons, | ) ) ) | Civil Action No. 1:16-cv-945-DRC |
| | ) | |
| Plaintiff, | ) | Judge: Douglas R. Cole |
| | ) | |
| v. | ) | |
| | ) | |
| NEILMED PHARMACEUTICALS, INC., and JOHN DOES 1-5, | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT NEILMED PHARMACEUTICALS, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant NeilMed Pharmaceuticals, Inc. ("NeilMed") respectfully requests this Court grant summary judgment in its favor and against Plaintiff Ruth Ann Cooper, D.P.M. pursuant to Fed. R. Civ. P. 56(a). In support of this Motion, NeilMed relies upon the following Memorandum of Law and the Statement of Proposed Undisputed Facts contemporaneously filed.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP    MAC MURRAY & SHUSTER, LLP

*/s/ Jeffrey S. Jacobson*
Jeffrey S. Jacobson (*pro hac vice*)         Helen Marie MacMurray (0038782)
Matthew Fedor (*pro hac vice*)               6530 W. Campus Oval, Suite 210
600 Campus Drive                             New Albany, OH 43054
Florham Park, NJ 07932                        Telephone: (614) 939-9955
Telephone: (212) 248-3191                     Facsimile: (614) 939-9954
jeffrey.jacobson@faegredrinker.com            hmacmurray@mslawgroup.com
matthew.fedor@faegredrinker.com

*Attorneys for Defendant*
*NeilMed Pharmaceuticals, Inc.*

Dated: June 26, 2023

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (AT CINCINNATI)

| | | |
|---|---|---|
| RUTH ANN COOPER, D.P.M., individually and as the representative of a class of similarly-situated persons, | ) ) ) | Civil Action No. 1:16-cv-945-DRC |
| | ) | Judge:  Douglas R. Cole |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| NEILMED PHARMACEUTICALS, INC., and JOHN DOES 1-5, | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT NEILMED PHARMACEUTICALS, INC.'S
## OPENING MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

FAEGRE DRINKER BIDDLE & REATH LLP
Jeffrey S. Jacobson (*pro hac vice*)
Matthew Fedor (*pro hac vice*)
600 Campus Drive
Florham Park, NJ  07932
Telephone:  (212) 248-3191
Email: jeffrey.jacobson@faegredrinker.com
        matthew.fedor@faegredrinker.com

MAC MURRAY & SHUSTER, LLP
Helen Marie MacMurray (0038782)
6530 W. Campus Oval, Suite 210
New Albany, OH  43054
Tel:  (614) 939-9955
Fax:  (614) 939-9954
Email: hmacmurray@mslawgroup.com

*Attorneys for Defendant*
*NeilMed Pharmaceuticals, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................ 3

STANDARD OF REVIEW .................................................................................................. 6

ELEMENTS OF DR. COOPER'S TCPA CLAIM ................................................................ 6

ARGUMENT ....................................................................................................................... 8

      A.    The Communication Is Not An "Advertisement" Within the Meaning of
           the TCPA .................................................................................................. 8

      B.    The Communication Was Not "Unsolicited" Because Evidence Confirms
           That NeilMed Obtained Dr. Cooper's "Prior Express Invitation or
           Permission" .............................................................................................. 12

      C.    Dr. Cooper Cannot Prove that She Received NeilMed's Communication
           On a "Telephone Facsimile Machine" ...................................................... 15

CONCLUSION ................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Cases**                                                        **Page(s)**

*In re Advanced Rehab & Med., P.C.*,
No. 20-0506, 2021 WL 3533492 (6th Cir. Apr. 27, 2021)................................................ 20

*Advanced Rehab & Medical, P.C. v. Amedisys Holding, LLC*,
2020 WL 4937790 (W.D. Tenn. Aug. 24, 2020)............................................................... 19

*Advantage Healthcare, Ltd. v. DNA Diagnostics Ctr., Inc.*,
2019 WL 3216026 (N.D. Ill. July 17, 2019), *appeal dismissed,* 2020 WL
3250493 (7th Cir. June 5, 2020) .......................................................................................... 13

*In re Amerifactors Fin. Grp., LLC Pet. for Expedited Declaratory Ruling Rules &
Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act
of 2005*,
34 F.C.C. Rcd. 11950..............................................................................................*passim*

*Boykin v. Family Dollar Stores of Michigan, LLC*,
3 F.4th 832 (6th Cir. 2021)................................................................................................... 13

*BPP v. Caremark PCS Health, LLC*,
53 F. 4th 1109 (8th Cir. 2022).......................................................................................10, 12

*Chrysler Realty Co. v. Design Forum Architects, Inc.*,
2009 WL 5217992 (E.D. Mich. Dec. 31, 2009)................................................................. 18

*Cooper v. NeilMed Pharmaceuticals, Inc.*,
342 F.R.D. 240 (S.D. Ohio 2022).....................................................................................1, 7

*Cooper v. NeilMed Pharmaceuticals, Inc.*,
No. 1:16cv945, 2017 WL 4349085 (S.D. Ohio Sept. 29, 2017) (Barrett, J.)......................3, 9

*Crown Battery Manuf. Co. v. Club Car, Inc.*,
185 F. Supp. 3d 987 (N.D. Ohio 2016) ............................................................................. 15

*Daisy, Inc. v. Mobile Mini, Inc.*,
489 F. Supp. 3d 1287 (M.D. Fla. 2020).............................................................................. 16

*Doren v. Battle Creek Health Sys.*,
187 F.3d 595 (6th Cir. 1999) ................................................................................................. 6

*E.E.O.C. v. JP Morgan Chase Bank, NA*,
295 F.R.D. 166 (S.D. Ohio 2013)......................................................................................... 15

*Exclusively Cats Veterinary Hosp., P.C. v. M/A/R/C Research, LLC*,
444 F. Supp. 3d 775, 777, 779-80, 782-83 (E.D. Mich. 2020)............................................ 10

*Fackelman v. Micronix*,
   No. 98320, 2012 WL 5987139 (Ohio Ct. App. Nov. 29, 2012) .......................................... 12

*Fober v. Mgmt. & Tech. Consultants, LLC*,
   886 F.3d 789 (9th Cir. 2018) ......................................................................................... 14

*Goodwin v. Nissan N. Am., Inc.*,
   2012 WL 2237110 (M.D. Tenn. June 15, 2012) ............................................................. 18

*Gorss Motels, Inc. v. Safemark Sys., LP*,
   931 F.3d 1094 (11th Cir. 2019) ..................................................................................... 14

*Jeffrey Katz Chiropractic, Inc. v. Diamond Respiratory Care, Inc.*,
   340 F.R.D. 383 (N.D. Cal. 2021) ................................................................................... 16

*In re Joseph T. Ryerson & Son, Inc. Pet. for Declaratory Ruling Rules & Reguls.*
*Implementing the Tel. Consumer Prot. Act of 1991*,
   35 F.C.C. Rcd. 9474, No. 02-278, 05-338, 2020 WL 5362216 (2020) ................................ 7

*Joseph T. Ryerson*,
   35 FCC Rcd. at 9477-78 ................................................................................................. 16

*Kaye v. Merck & Co.*,
   852 F. App'x 569 (2d Cir. 2021) .................................................................................... 13

*KHS Corp. v. Singer Fin. Corp.*,
   No. 16-55, 2018 WL 4030699 (E.D. Pa. Aug. 23, 2018) ................................................. 14

*King v. Am. Power Conversion Corp.*,
   181 F. App'x 373 (4th Cir. 2006) ................................................................................... 19

*Licari Family Chiropractic Inc. v. Eclinical Works, LLC*,
   2021 WL 4506405 (M.D. Fla. Jan. 11, 2021) ....................................................... 8, 16, 18

*Lyngaas v. Curaden AG*,
   992 F.3d 412 (6th Cir. 2021) ................................................................................ 8, 19, 20

*Matthew N. Fulton, D.D.S. v. Enclarity, Inc.*,
   962 F.3d 882 (6th Cir. 2020) ........................................................................................... 9

*Physician's Healthsource, Inc. v. Masimo Corp.*,
   2019 WL 8138043 (C.D. Cal. Nov. 21, 2019) ................................................................ 18

*Physicians Healthsource, Inc. v. Cephalon, Inc.*,
   954 F.3d 615 (3d Cir. 2020) ...................................................................................... 7, 14

*Robert W. Mauthe MD PC v. Millennium Health LLC*,
   58 F.4th 93 (3d Cir. 2023) ...................................................................................... 10, 11

*Robinson v. Georgia-Pac. Corrugated, LLC,*
    No. 1:18-CV-307, 2020 WL 473543 (S.D. Ohio Jan. 29, 2020) ............................................ 6

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act*
    *of 1991,*
    18 F.C.C. Rcd. 14014 ............................................................................................................... 7

*Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.,*
    788 F.3d 218 (6th Cir. 2015) ........................................................................................ 9, 10, 11

*Scoma Chiropractic, P.A. v. Nat'l Spine & Pain Ctrs. LLC,*
    No. 2:20-cv-430, 2022 WL 16695130 (M.D. Fla. Nov. 3, 2022) ................................... 16, 19

*Silvestri v. Gen. Motors Corp.,*
    271 F.3d 583 (4th Cir. 2001) ................................................................................................. 19

*True Health Chiropractic Inc. v. McKesson Corp.,*
    2021 WL 4461585 (N.D. Cal. Sept. 29, 2021) ............................................................... 16, 18

**Statutes, Rules & Regulations**

47 U.S.C. § 227(a)(3) ................................................................................................................ 7, 15

47 U.S.C. § 227(a)(5) ................................................................................................................. 6, 9

47 U.S.C. § 227(b)(1)(C) .......................................................................................................... 6, 15

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 9

Fed. R. Civ. P. 56(a) ..................................................................................................................... 6

Federal Arbitration Act ................................................................................................................. 13

Telephone Consumer Protection Act ("TCPA") ................................................................... *passim*

## INTRODUCTION

The evidence and applicable law confirm that Plaintiff Dr. Ruth Ann Cooper's claim for a single alleged violation of the Telephone Consumer Protection Act ("TCPA") fails and that Defendant NeilMed Pharmaceuticals, Inc. is entitled to summary judgment in its favor. Although NeilMed does not dispute that it sent the August 2016 communication to Dr. Cooper (attached as Exhibit A to this Memorandum), the communication did not violate the TCPA for three reasons.

*First*, NeilMed's communication was not an "advertisement." NeilMed was not seeking to sell anything to Dr. Cooper. NeilMed had sent Dr. Cooper's office *free* samples of its products prior to August 2016, and NeilMed's longstanding business practice is to send free samples of its products only upon express request from a doctor's office. NeilMed periodically communicated with doctors' offices that requested free samples, including by facsimile transmission, asking those offices to confirm their current mailing addresses and to indicate which additional free samples they wanted (if any). Nothing about Exhibit A sought or promoted the *sale* of NeilMed's products. The communication was exactly what it says it was: a request to Dr. Cooper's office to verify its current address and to learn whether the office wanted additional free product samples of the kind someone in the office apparently had requested earlier. It was not an advertisement.

*Second*, the evidence shows that the August 2016 communication was not "unsolicited" and that NeilMed obtained consent from Dr. Cooper's office to send it. NeilMed's policy and practice is, and always has been, to send faxes regarding product samples or medical literature *only* to persons who expressly consented to receive those faxes. As this Court found in its decision denying Dr. Cooper's motion for class certification, the discovery record in this case "strongly suggest[s] that NeilMed built its list of fax recipients organically over several years, and that thousands of individual physicians and/or their offices provided their contact information in a variety of ways and in different settings." *Cooper v. NeilMed Pharmaceuticals, Inc.*, 342 F.R.D.

240, 248 (S.D. Ohio 2022). NeilMed's business practice was to obtain consent to send faxes regarding product samples and medical literature directly from doctors' office during these interactions before adding their contact information to NeilMed's contact list.

NeilMed does not have a record that explains exactly how Dr. Cooper's fax number came to be part of its list. But since the number was added to the list around the time NeilMed sent free samples to Dr. Cooper's office, the only logical conclusion is someone from Dr. Cooper's office provided the number when requesting the free samples. Regardless, in light of NeilMed's longstanding policy and business practices, the presence of a customer's fax number in NeilMed's database indicates that NeilMed obtained consent to send faxes regarding product samples when it obtained the number. Dr. Cooper, for her part, provided *no* evidence whatsoever on the issue of consent. Instead, Dr. Cooper and her husband/office manager Randal Cooper both testified only that neither of them recalled giving NeilMed consent. A lack of recollection is not evidence, and Dr. Cooper did not query any of her office staff or even retain records of who worked in her office at the time NeilMed sent her office free samples to determine the roles they played in requesting samples from NeilMed. In sum, all available evidence indicates that NeilMed obtained the requisite consent, and no evidence indicates otherwise.

***Third***, Dr. Cooper has not established and cannot establish that her office received the August 2016 communication on a "telephone facsimile machine" as that term is defined in the TCPA. The communication she attached to her Complaint, which is attached to this Memorandum as Exhibit B, differs from Exhibit A, in that it bears markings demonstrating Dr. Cooper received it using *software*, not a fax machine. That software *cannot* deliver documents to traditional fax machines, and it *can* be configured to route communications as electronic mail messages and printed manually (or not printed at all). Dr. Cooper did not retain information about how she configured this software at the time she received the communication from NeilMed, and she also

did not retain the equipment she used at the time or even its logs. Without them, Dr. Cooper cannot prove she received the communication using a telephone facsimile machine.

Any one of these suffices on its own to warrant the Court's granting summary judgment in NeilMed's favor. NeilMed should prevail on all three.

## FACTUAL AND PROCEDURAL BACKGROUND

"NeilMed manufactures and sells medical products, including nasal/sinus rinses, decongestants, ear care products, and first aid products." *Cooper v. NeilMed Pharmaceuticals, Inc.*, No. 1:16cv945, 2017 WL 4349085, at *1 (S.D. Ohio Sept. 29, 2017) (Barrett, J.); *see also* Proposed Undisputed Facts ("Facts") ¶ 1. NeilMed distributes free samples of its products to healthcare professionals upon their request. *Id.* ¶ 2.

One way NeilMed communicates with doctors is by facsimile transmission. *Id.* ¶ 3. It is, and always has been, NeilMed's practice to send faxes regarding product samples or medical literature *only* to persons who expressly consented to receive them. *Id.* ¶ 4. The company built an extensive database of doctors' fax numbers over 20 years through various methods:

- NeilMed sales representatives personally visited doctors' offices to distribute product samples, obtain their contact information, business cards, and consent to send faxes about interest in receiving product samples and medical literature.

- Some contacts are personal colleagues of NeilMed's founder, Dr. Ketan Mehta, who consented to him directly.

- NeilMed hosted exhibit booths at hundreds of tradeshows and medical conventions where it demonstrated its products and obtained attendees' contact information and consent to send faxes regarding product samples and medical literature.

- Customers also contacted NeilMed directly by phone, fax, text message, regular mail, and email, and through NeilMed's website, to provide their contact information and request to receive faxes regarding product samples and medical literature.

*Id.* ¶ 5.

-3-

Dr. Cooper is a podiatrist with a practice in Cincinnati. *Id.* ¶ 6. NeilMed's database maintains records of health care professionals to whose offices NeilMed sent free samples upon request, and those records confirm NeilMed sent product samples to Dr. Cooper's office on or about September 25, 2013. *Id.* ¶¶ 7-8. NeilMed does not retain actual requests for samples, so it cannot determine the identity of the person from Dr. Cooper's office who requested the samples or by what means. *Id.* ¶ 9. However, it was NeilMed's practice at the time only to send samples to doctors' offices *upon request*. *Id.* ¶ 10. NeilMed also added Dr. Cooper's office fax number to its contact database in 2013. *Id.* ¶ 11. Based on the evidentiary record and NeilMed's business practices, NeilMed submits that the only logical explanation for both occurrences—the sending of samples and NeilMed adding Dr. Cooper's number to its database—is that when Dr. Cooper's office contacted NeilMed to request samples, the person provided the office fax number and consented to receive faxes regarding product sample requests.

Dr. Cooper's office has multiple employees at any one time and has experienced turnover. *Id.* ¶ 12. All of the employees who work and have worked for Dr. Cooper know the office fax number or have "easy access to look it up." *Id.* ¶ 13. Dr. Cooper's office also uses business cards that display the office fax number. *Id.* ¶ 14. Those business cards are available to all office employees, and the employees are not restricted in giving them out. *Id.* Neither before nor after commencing this lawsuit did Dr. Cooper or Randal Cooper query any current or former staff members about those staffers' communications with NeilMed. *Id.* ¶ 15. Dr. Cooper and Randal Cooper's testimony was only that *they*—the two of them—do not recall having given NeilMed consent to send advertisements by fax. *Id.* ¶ 16. Dr. Cooper's office also destroyed employment records from 2013 during the pendency of this lawsuit, so it no longer is possible to query past employees about what consent they provided to NeilMed to use the office fax number to send communications like the one at issue. *Id.* ¶ 17.

On August 24, 2016, NeilMed sent to Dr. Cooper's office the communication attached as Exhibit A to this Memorandum. Ex. A; Facts ¶ 18. It stated, "Dear Physician and Office Staff, We would like to send you NeilMed product samples. Please fill out the form below to verify your address and confirmation for samples." Ex. A. It described NeilMed products by stating, "NeilMed Sinus Rinse and NeilMed Baby Care, Ear Care, and First Aid device have become an acceptable line of treatment for various self-care for simple ailments." *Id.* It asked the recipient to "update your current address and contact information and fax back to us." *Id.* It also invited the recipient to opt out of further faxes by checking a "remove my name" box and returning the fax. *Id.*

The document Dr. Cooper attached to her Complaint, which is attached as Exhibit B to this Memorandum, differs from Exhibit A in that it contains the notation "[t]his fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com." *Compare* Ex. B, *with* Ex. A; *see also* Facts ¶ 19. The GFI FaxMaker software enables users to receive communications sent by facsimile transmission without using a fax machine. Facts ¶ 20. The software adds this notation and can be configured to do either of two things with the altered message: (1) send it to the recipient as an attachment to an email, from which it can be read, printed (if desired), or deleted; or (2) route it to a printer for automatic printing. *Id.* ¶ 21. Communications received using GFI FaxMaker cannot be routed to a traditional fax machine. *Id.* ¶ 22. Neither Dr. Cooper nor Randal Cooper knew how Dr. Cooper's office configured the GFI FaxMaker software at the time NeilMed sent the communication at issue. *Id.* ¶ 23. Indeed, Randal Cooper professed unawareness that the office even used GFI FaxMaker software in 2016, but GFI's records are clear on this point and show that Dr. Cooper's office licensed the FaxMaker software beginning no later than May 2016, months before NeilMed sent the communication at issue, and GFI testified that the communication would not bear the "received by GFI FaxMaker" notation if it had not been received and routed using the software. *Id.* ¶ 24.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the court must review factual evidence in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor, "[c]onclusory testimony devoid of any specific facts . . . is not sufficient" to create the requisite genuine issue of material fact. *Robinson v. Georgia-Pac. Corrugated, LLC*, No. 1:18-CV-307, 2020 WL 473543, at *6 (S.D. Ohio Jan. 29, 2020), *citing Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598–99 (6th Cir. 1999).

It typically is not the court's role to weigh the evidence or make credibility and fact determinations when deciding cross-motions for summary judgment. However, due to the unique procedural posture of this case—and the fact that what is at stake in the parties' cross-motions for summary judgment is a $500 individual claim—as discussed during the May 4, 2023, case management conference, the parties have stipulated that the Court may weigh the evidence and resolve any disputed issues of fact as though it was conducting a bench trial.

## ELEMENTS OF DR. COOPER'S TCPA CLAIM

The TCPA prohibits using "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless" the sender and recipient have an "established business relationship," the recipient voluntarily made its fax number available, and the fax contains an "opt-out" notice. 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). "Consent," "invitation," and "permission"

are used interchangeably in this context. *See, e.g., Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 621 (3d Cir. 2020); *Cooper*, 342 F.R.D. at 251.

The TCPA defines a "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3). Because technology has advanced since the TCPA's enactment thirty years ago, not all current equipment capable of receiving a communication sent as a fax satisfies this statutory definition. In 2003, the Federal Communications Commission ("FCC") made clear that the TCPA's prohibition does not extend to facsimile messages "sent as email over the Internet." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014 ¶ 200 (2003). In a December 2019 declaratory ruling, the FCC stated that "an online fax service that effectively receives faxes 'sent as email over the Internet' is not itself 'equipment which has the capacity . . . to transcript text or images (or both) from an electronic signal received over a regular telephone line into paper," and thus is not a "telephone facsimile machine" for purposes of imposing liability under the TCPA. *In re Amerifactors Fin. Grp., LLC Pet. for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act of 2005*, 34 F.C.C. Rcd. 11950 ¶ 3, 2019 WL 6712128, at *3 (2019), ("*Amerifactors*"). "A fax received by an online fax service is effectively an email" because "a consumer can delete without printing" any "faxes sent to online fax services via an attachment." *Id.* Further, "an online fax service cannot itself print a fax—the user of an online fax service must connect his or her own equipment in order to do so." *Id.* The FCC reaffirmed *Amerifactors* in *In re Joseph T. Ryerson & Son, Inc. Pet. for Declaratory Ruling Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 35 F.C.C. Rcd. 9474, No. 02-278, 05-338, 2020 WL 5362216, at *4 (2020).

In *Lyngaas v. Curaden AG*, 992 F.3d 412, 427 (6th Cir. 2021), the Sixth Circuit held that faxes received using a computer or another device "that is not a traditional fax machine" still can give rise to TCPA liability. *Lyngaas* distinguished a fax received by computers from one "*sent as an email* over the Internet—*e.g.*, a fax attached to an email message or a fax whose content has been pasted into an email message," which "is not subject to the TCPA." *Id.* (emphasis in original). The Sixth Circuit noted that neither party in *Lyngaas* cited *Amerifactors*, likely because the technology at issue in *Lyngaas* was not an "online fax service." In *dicta*, the court noted it might not apply *Amerifactors* retroactively, but *Amerifactors* reflected an authoritative interpretation of the TCPA's statutory language, not a prospective regulation issued under the FCC's rulemaking authority. Numerous courts, therefore, have rejected TCPA claims involving faxes sent using online fax services prior to the FCC's issuance of *Amerifactors*. *See, e.g., Licari Family Chiropractic Inc. v. Eclinical Works, LLC*, 2021 WL 4506405, at *4-5 (M.D. Fla. Jan. 11, 2021).

For Dr. Cooper to prevail on her personal claim, the evidence must support a finding that the August 2016 communication was (1) an "unsolicited advertisement," meaning it was both (a) an advertisement as opposed to an informational message, and (b) "unsolicited," meaning it was sent without her prior express invitation or permission; and (2) received on "a telephone facsimile machine." NeilMed disputes all three elements.

## ARGUMENT

If the Court finds that the evidence falls short on any of the three disputed issues, it must grant summary judgment in NeilMed's favor. As explained below, the Court should find that Dr. Cooper cannot prevail on *any* of these three disputed issues.

## A.     The Communication Is Not An "Advertisement" Within the Meaning of the TCPA

Viewed in context with the undisputed discovery record, NeilMed's August 2016 communication to Dr. Cooper's office does not meet the definition of an "advertisement" under

Sixth Circuit law. Under the TCPA, an "advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). In *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015), the Sixth Circuit analyzed the statutory term and held that "[a]n advertisement is any material that promotes the sale (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit." As the Court explained, "the fax must *advertise* something" to qualify as an advertisement, and advertising is "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public . . . as [being] *for sale*." *Sandusky*, 788 F.3d at 221-22 (emphases in original). "So to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim." *Id.* at 222. The finder of fact "must be able to reasonably conclude that [the sender] sent the faxes from the point of view of profit, to promote the availability or quality of something available to be bought or sold." *Id.* at 224 (internal quotation marks and citation omitted). Moreover, in *Matthew N. Fulton, D.D.S. v. Enclarity, Inc.*, 962 F.3d 882, 889 (6th Cir. 2020), the Sixth Circuit made clear that courts must not make the final (*i.e.*, trial liability) determination of whether a communication sent by fax transmission is an "advertisement" by looking solely at "the face of the challenged fax."[1] Context is important.

In *Sandusky*, the defendant pharmacy benefit manager sent two faxes to the plaintiff chiropractic services company. The faxes listed medications that were available in the health plans

---

[1] NeilMed previously moved to dismiss this case on the basis that the August 2016 communication was not an "advertisement." Applying the Rule 12(b)(6) standard, Judge Barrett denied that motion, finding that Dr. Cooper "states a plausible claim that [NeilMed]s fax qualifies as an advertisement." *Cooper*, 2017 WL 4349085, at *5. Of course, this ruling was based on Dr. Cooper's allegations and the face of the August 2016 communication alone, without the benefit of any discovery materials, and Judge Barrett was obligated to assume that all of Dr. Cooper's allegations were true and afford her the benefit of all reasonable inferences. Consistent with the Sixth Circuit's decision in *Matthew N. Fulton, D.D.S.*, Judge Barrett's ruling is not a final determination on the advertising issue, and the Court must now determine whether the communication is an advertisement in light of the record evidence. 962 F.3d at 889.

of the plaintiff's patients. The Sixth Circuit found that the two faxes at issue were not advertisements because they lacked the "commercial components inherent in ads." *Sandusky*, 788 F.3d at 222. That "the faxes called attention to the medications and Medco's services" did not make the communications "advertisements" for several reasons, one of which was that "there was no evidence Medco was offering to ever sell the drugs or its services to Sandusky." *Id.* As here, the communication referenced products that were "available" for sale, but did not involve any attempt to sell those products to or through the recipient of the communication.

Multiple courts have gone further and concluded that communications offering free goods or services cannot be considered advertisements within the meaning of the TCPA. For example, in *Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93, 94-96 (3d Cir. 2023), the Third Circuit found that no reasonable recipient of a one-page fax promoting a free educational seminar could "view it as promoting the purchase or sale of goods, services, or property[,]" particularly because neither the fax nor the seminar: 1) discussed anything that could be bought or sold; 2) included product pictures, testimonials, or coupons; or 3) provided pricing information or a direct link to purchase anything. Similarly, in *BPP v. Caremark PCS Health, LLC*, 53 F. 4th 1109, 1112-13 (8th Cir. 2022), the Eighth Circuit relied on *Sandusky* to hold that the "TCPA does not ban all faxes that contain information about commercial goods or services," when a fax merely "informed healthcare providers that they had the option to impose a three-day limit on opioid prescriptions for certain patients" and "did not promote the sale of any goods or services" to the receiving doctors or their patients. *See also, e.g., Exclusively Cats Veterinary Hosp., P.C. v. M/A/R/C Research, LLC*, 444 F. Supp. 3d 775, 777, 779-80, 782-83 (E.D. Mich. 2020) (applying *Sandusky* and finding fax seeking participation in informational survey was not an advertisement, even though it offered $20 Amazon gift card and $500 prize to incentivize participation).

Here, the evidence confirms that Dr. Cooper's office previously had requested and received free product samples from NeilMed. Facts ¶¶ 7-10. The August 2016 communication that NeilMed sent to Dr. Cooper's office was purely informational—it sought to verify her office address, confirm whether her office wanted additional free samples (and with what frequency), and asked whether the office wanted to receive relevant medical literature or updates from NeilMed. *See* Ex. A; Facts ¶ 18. Notably, no evidence suggests that NeilMed sought to sell its products to or through Dr. Cooper's office. Thus, it is beyond dispute that the communication was not proposing a commercial transaction with Dr. Cooper.

In fact, nothing about Exhibit A sought to *sell* or promoted the *sale* of NeilMed's products *at all*—to Dr. Cooper or her patients. On its face, the August 2016 communication lacks the "commercial components inherent in ads." *Sandusky*, 788 F.3d at 222. For example, it did not include any product pictures, customer testimonials, or coupons. *See Millennium Health*, 58 F.4th at 94-96. It did not offer a comparison between NeilMed's products and competitive products. It also did not include any price information, instructions on how to purchase NeilMed's products, or even information regarding where NeilMed's products could be purchased. *Id*.

It is foreseeable, of course, that someone who obtained the free samples might buy NeilMed's products at some point in the future. But that is the kind of "extraneous and speculative down-the-stream evidence" that the Sixth Circuit held "cannot convert non-ads into ads." *Sandusky*, 788 F.3d at 225. Indeed, that the ultimate effect of a communication might "have a positive effect" on the sender's business is not enough to transform a communication into an advertisement. *Id*. "The fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation." *Id*. Calling the August 2016 communication an advertisement solely based on a "remote or minor commercial purpose" would impermissibly broaden the TCPA's

definition because "[a]lmost any fax could economically benefit the sender through branding, goodwill, or other indirect effects, regardless of whether that fax would be plainly understood as promoting a commercial good or service." *BPP*, 53 F. 4th at 1113.

In sum, the evidentiary record and applicable case law confirm that the communication NeilMed sent to Dr. Cooper is not an "advertisement." As a result, this ends Dr. Cooper's case and the Court should grant NeilMed's motion for summary judgment.

**B.     The Communication Was Not "Unsolicited" Because Evidence Confirms That NeilMed Obtained Dr. Cooper's "Prior Express Invitation or Permission"**

NeilMed's evidence that it obtained consent from Dr. Cooper's office to send the August 2016 communication consists of (1) undisputed testimony that NeilMed's policy and established business practice was to send faxes regarding product samples or medical literature only to persons who expressly consented to receive such faxes; (2) undisputed testimony that NeilMed generated its database of healthcare provider contact information organically over 20 years in a variety of ways, and that its business practice was to obtain consent to send faxes regarding product samples and medical literature directly from the providers' offices during these interactions before adding their contact information to NeilMed's contact list; (3) declarations from other healthcare providers that they expressly consented to receive communications such Exhibit A; (4) the fact that NeilMed only sent product samples upon request; (5) the presence of Dr. Cooper's fax number in NeilMed's contact database; and (6) the fact that Dr. Cooper's fax number was added to the database around the same time NeilMed sent her office product samples in 2013. Facts ¶¶ 2-11.

In light of NeilMed's undisputed longstanding policy and practice, the presence of a fax number in NeilMed's database alone indicates that NeilMed obtained consent to send faxes regarding product samples when it obtained the number. Although this evidence is admittedly circumstantial in nature, it suffices to prove that NeilMed obtained prior express permission to send Dr. Cooper's office the August 2016 communication. *See, e.g., Fackelman v. Micronix*, No.

98320, 2012 WL 5987139, at *1, *3 (Ohio Ct. App. Nov. 29, 2012) (a defendant may receive "contemporaneous permission to send a . . . fax, given by an employee of [the plaintiff] as evidenced by the release of [the plaintiff's] fax number" and a request to send information via fax.); *Kaye v. Merck & Co.*, 852 F. App'x 569, 570-72 (2d Cir. 2021) (finding doctor gave express consent to receive fax advertisement when his office's answering service gave defendant permission by phone to send fax, and fax received was sufficiently similar to the one to which doctor's office consented). This consent need only be obtained once, and lasts thereafter until it is clearly revoked. *See Advantage Healthcare, Ltd. v. DNA Diagnostics Ctr., Inc.*, 2019 WL 3216026, at *3 (N.D. Ill. July 17, 2019), *appeal dismissed,* 2020 WL 3250493 (7th Cir. June 5, 2020).

In opposition to NeilMed's compelling evidence of consent, Dr. Cooper has offered essentially no evidence whatsoever to the contrary. At their depositions, Dr. Cooper and her office manager/husband Randal Cooper did not deny that someone from Dr. Cooper's office gave NeilMed permission. Instead, both merely testified that they personally did not recall having provided permission to NeilMed. Facts ¶ 16. But their lack of recollection is not a denial that prior express permission was in fact given (by them or someone else in the office), nor is it sufficient to create a genuine dispute of fact. *See Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 839-40 (6th Cir. 2021) ("[C]onvenient memory lapses do not create factual disputes that are genuine. … A party thus cannot expect to obtain a trial under § 4 [of the Federal Arbitration Act] simply by testifying that the party does not "remember" signing an arbitration contract or receiving information about arbitration.").

Dr. Cooper's name and contact information, including her fax number, did not end up in NeilMed's database by accident. The undisputed evidence shows it would not have been in NeilMed's contact database unless someone from her office consented to receive communications

-13-

such as the August 2016 communication, in the process of requesting free product samples or otherwise. Facts ¶¶ 2-11. Indeed, Dr. Cooper adduced no evidence that NeilMed obtained her contact information by purchasing it or by any means other than someone from her office asking NeilMed to send samples and providing the office's contact information while doing so.

Dr. Cooper's office employed multiple people both in 2013 (when her office received product samples) and in 2016 (when NeilMed sent the communication at issue). *Id.* ¶ 12. Any employee could have provided NeilMed with the necessary permission to communicate by fax. In fact, many courts have held that the mere provision of a fax number constitutes express consent to receive information by fax related to the reason why the number was provided. *Physicians Healthsource v. Cephalon*, 954 F.3d 615 (3d Cir. 2020) (if a doctor's office "provide[d] business cards with [their] fax number," this constitutes "express consent, invitation, and permission to receive related information"); *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1101 (11th Cir. 2019) (Holding that "although express permission requires a clear and unmistakable communication, it does not require that a recipient state specifically that his permission includes faxed advertisements" and finding that "by providing their fax numbers in their [franchise] agreements, the hotels invited the assistance or advertisements to come [from the franchisor] by fax") (cleaned up); *KHS Corp. v. Singer Fin. Corp.*, No. 16-55, 2018 WL 4030699, at *4 (E.D. Pa. Aug. 23, 2018) ("When a recipient voluntarily provides a [fax] number, she provides express consent to receive material 'related to the reason why she provided her number in the first place.'") (quoting *Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018)).

Dr. Cooper and Randal Cooper inexplicably did not ask any of the office's current employees if they communicated with NeilMed, requested samples from NeilMed, or provided NeilMed with permission to send faxes. Facts ¶ 15. And worse, after having brought this lawsuit, Dr. Cooper did not preserve records of who worked for her in 2013. *Id.* ¶ 17. Had Dr. Cooper not

discarded those records, the parties likely could have determined who sought and used the samples NeilMed sent to Dr. Cooper's office in 2013, and then deposed that person about his or her communications with NeilMed. The Court should not reward Dr. Cooper for her spoliation of that important evidence. *See, e.g., E.E.O.C. v. JP Morgan Chase Bank, NA*, 295 F.R.D. 166, 169, 173-75 (S.D. Ohio 2013) (denying party's merits-based dispositive motion and allowing permissive adverse inference because party destroyed relevant electronic data during litigation and despite demands for data preservation); *Crown Battery Manuf. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 999-1004 (N.D. Ohio 2016) (imposing "mandatory, non-rebuttable adverse-inference" against party for failing to preserve physical evidence relevant to contract and warranty dispute).

The parties have authorized the Court to decide disputed issues of fact based on the discovery record. That record confirms that the August 2016 fax was sent with the prior express permission or invitation of Dr. Cooper's office. Dr. Cooper does not have any competent evidence to rebut this point. As a result, Dr. Cooper's TCPA claim fails and the Court should grant NeilMed's motion for summary judgment.

## C.  Dr. Cooper Cannot Prove that She Received NeilMed's Communication On a "Telephone Facsimile Machine"

The final reason the Court should adjudicate this case against Dr. Cooper is that she cannot carry her burden of demonstrating that she received NeilMed's communication on a "telephone facsimile machine." The TCPA makes it unlawful for anyone "to use any telephone facsimile machine, computer, or other device to send, *to a telephone facsimile machine*, an unsolicited advertisement[.]" 47 U.S.C. § 227(b)(1)(C) (emphasis added). The TCPA defines "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3). As discussed below, Dr. Cooper cannot prove that her

-15-

office received the August 2016 communication on equipment that had the requisite capacity to be considered a "telephone facsimile machine," and the evidence suggests it did not.

In the December 2019 *Amerifactors* declaratory ruling, the FCC "ma[d]e clear that an online fax service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper' is not a 'telephone facsimile machine'" for purposes of imposing liability under the TCPA. *Amerifactors*, 34 FCC Rcd. at 11950-51 (defining "online fax services" as "cloud-based service[s] consisting of a fax server or similar device that is used to send or receive documents, images, and/or electronic files in digital format over telecommunication facilities" and that "allow[] users to 'access faxes the same way that they do email[.]'"). The FCC reaffirmed *Amerifactors* in its September 4, 2020 declaratory ruling in *Joseph T. Ryerson*, 35 FCC Rcd. at 9477-78.

Numerous courts have held that where plaintiffs received communications using online fax services like those in *Amerifactors*, TCPA claims fail. *See, e.g., True Health Chiropractic Inc. v. McKesson Corp.*, 2021 WL 4461585, at *2 (N.D. Cal. Sept. 29, 2021) ("*Amerifactors* is binding on this Court" and "there is no TCPA liability for sending a fax to an online fax service"); *Jeffrey Katz Chiropractic, Inc. v. Diamond Respiratory Care, Inc.*, 340 F.R.D. 383, 389 (N.D. Cal. 2021) ("the *Amerifactors* decision is clearly final: it is not tentative and it determines rights and obligations under the TCPA"); *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1292, 1297 (M.D. Fla. 2020) (plaintiff's "alleged harm is not among the category of injuries Congress intended to remedy" when it received a fax via email); *Licari Family Chiropractic Inc. v. Eclinical Works*, LLC, 2021 WL 4506405, *4-7 (M.D. Fla. Jan. 11, 2021) (fax received as an email attachment from an online fax service "cannot give rise to TCPA liability because it was not sent to a 'telephone facsimile machine'"); *Scoma Chiropractic, P.A. v. Nat'l Spine & Pain Ctrs. LLC*, No. 2:20-cv-

430, 2022 WL 16695130, at *8-9 (M.D. Fla. Nov. 3, 2022) (*Amerifactors* is entitled to *Chevron* deference and "[t]he Court agrees with several other courts in finding that receipt of a fax via an online fax service, as opposed to a stand-alone fax machine, does not support a TCPA claim.").

Here, the communication Dr. Cooper appended to her Complaint (Exhibit B to this Memorandum) contains an added footer that was not part of NeilMed's original Communication (Exhibit A to this Memorandum). This notation was added by the service Dr. Cooper's office used to receive the communication, and it states, "[t]his fax was received by GFI FaxMaker fax server. For more information, visit http://www.gfi.com."Facts ¶ 19. GFI FaxMaker is software that allows the user to send, receive, and access faxes the same way that they send, receive, and access email. *Id*. ¶¶ 20-21. GFI's business records show that Dr. Cooper's office licensed the FaxMaker software beginning no later than May 2016, months before NeilMed sent the communication at issue. *Id*. ¶ 24. This software must be affirmatively installed on an end user's device, and it enables the end user to receive communications from a fax machine **without the end user actually using a traditional fax machine receive the communications**. *Id*. ¶¶ 20-21.

Critically, a message received by GFI FaxMaker **cannot be routed to a traditional fax machine**–indeed, the whole purpose of the software is to enable users to receive faxes **without using a fax machine**. *Id*. ¶¶ 20, 22. Instead, GFI FaxMaker gives users the option of receiving fax messages as emails, in which case users can choose whether or not to view, print, and/or delete messages. *Id*. ¶ 21. Users alternatively can configure the software so that incoming messages automatically print on a traditional printer. *Id*. Under either configuration, GFI FaxMaker adds the same footer that appears on the copy of the communication Dr. Cooper printed. *Id*.

Just as Dr. Cooper did not retain evidence of who she employed at the times her office received NeilMed's free samples and the communication at issue, she did not retain (a) the Sharp printer on which she claims the August 2016 communication was printed, (b) the relevant

transmission logs for that device, or (c) information of how her office configured and used the GFI FaxMaker software at the time NeilMed sent the communication. She inexplicably discarded all of this information while this lawsuit was pending, without notice to NeilMed and without taking any steps to preserve it. *Id*. ¶ 25. This is sanctionable conduct. *See, e.g., Physician's Healthsource, Inc. v. Masimo Corp.*, 2019 WL 8138043, at *16 (C.D. Cal. Nov. 21, 2019) (granting adverse inference against TCPA plaintiff who spoliated relevant evidence and was represented by Dr. Cooper's counsel); *Goodwin v. Nissan N. Am., Inc.*, 2012 WL 2237110, at *1, *5-6 (M.D. Tenn. June 15, 2012) (barring plaintiff's expert testimony as to vehicle inspection where plaintiff traded in the subject vehicle without informing defendants); *Chrysler Realty Co. v. Design Forum Architects, Inc.*, 2009 WL 5217992, at *1, *5-6 (E.D. Mich. Dec. 31, 2009) (dismissing negligence claim on installation of HVAC system, where plaintiff had duty to preserve system, but had defendant's equipment removed and destroyed and new system installed before filing lawsuit).

Beyond the spoliation-caused absence of tangible evidence, Dr. Cooper and Randal Cooper testified they did not know how the office configured GFI FaxMaker (or even knew the office used the software), and they offered no witness with knowledge. Indeed, Dr. Cooper herself never even saw or read the August 2016 communication until the day before her deposition in December 2019—**over three years** after she allowed lawyers to file the Complaint on her behalf. Under these circumstances, Dr. Cooper plainly is not entitled to any benefit of the doubt that her office configured the software to print NeilMed's communication automatically or that the equipment had the capacity needed to be considered a "telephone facsimile machine" as defined by the TCPA.

Dr. Cooper bears the burden of proof to show that her office received the communication using equipment that qualifies as a "telephone facsimile machine," and she cannot meet that burden. *See, e.g., True Health Chiropractic Inc.*, 2021 WL 4461585, at *2 ("there is no TCPA liability for sending a fax to an online fax service"); *Licari Family Chiropractic Inc.*, 2021 WL

-18-

4506405, *4-7 (fax received as an email attachment from an online fax service "cannot give rise to TCPA liability because it was not sent to a 'telephone facsimile machine'"); *Scoma Chiropractic, P.A.*, 2022 WL 16695130, at *8-9 ("receipt of a fax via an online fax service, as opposed to a stand-alone fax machine, does not support a TCPA claim."). Even if NeilMed shared any part of the burden with respect to this element of the claim—and it does not—Dr. Cooper's spoliation would entitle NeilMed to an adverse inference that the discarded evidence would have shown Dr. Cooper configured the software to route incoming fax communications to email. Courts have gone so far as to grant dismissal where the effect of the spoliator's acts is "so prejudicial that it substantially denied the defendant the ability to defend the claim," as it is here. *King v. Am. Power Conversion Corp.*, 181 F. App'x 373, 376 (4th Cir. 2006), *quoting Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001). In *King*, the plaintiffs' insurance carrier hired a consultant that inadvertently destroyed the power unit at issue in the lawsuit. *Id.* at 378-79. The plaintiffs did not act intentionally or with bad faith, but "the conduct need not be intentional if 'it substantially denie[s] the defendant the ability to defend the claim.'" *Id.* at 377 (citation omitted).

With no evidence to offer on this crucial element of the claim, and the communication she attached to her complaint facially demonstrating she did not use a traditional fax machine and may have used an online fax service, Dr. Cooper likely will rely on *Lyngaas*, 992 F.3d at 425-26, in which the Sixth Circuit held that the term "telephone facsimile machine" was not limited to faxes sent to traditional fax machines because the TCPA's plain language "includes 'equipment' that has the 'capacity . . . to transcribe text or images' . . . from or onto paper—as long as the electronic signal is transmitted or received over a telephone line." But the Sixth Circuit did not consider the implications of FCC's *Amerifactors* ruling when it decided *Lyngaas* because an appeal of *Amerifactors* was pending and neither party in *Lyngaas* mentioned it. *See id.* at 427. Later, however, the Sixth Circuit heard an appeal from *Advanced Rehab & Medical, P.C. v. Amedisys*

-19-

*Holding, LLC*, 2020 WL 4937790, at *7-8 (W.D. Tenn. Aug. 24, 2020), in which the district court held that *Amerifactors* was subject to *Chevron* deference and reasonably interpreted the TCPA as not applying to communications received using online fax services. On appeal, the Sixth Circuit cast doubt on *Lyngaas*' findings, stating that "[w]e are not so sure" that "our decision in *Lyngaas* holds that the *Amerifactors Ruling* is not retroactive." *In re Advanced Rehab & Med., P.C.*, No. 20-0506, 2021 WL 3533492, at *2 (6th Cir. Apr. 27, 2021). Thus, the Court should not treat *Lyngaas* as precluding NeilMed from relying on the FCC's cogent reasoning in *Amerifactors* with respect to a communication it sent before the FCC decided the case.

## **CONCLUSION**

For the above reasons, Defendant respectfully requests that the Court grant summary judgment in its favor and dismiss this matter in its entirety.

Dated: June 26, 2023

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Jeffrey S. Jacobson*
Jeffrey S. Jacobson (*pro hac vice*)
Matthew Fedor (*pro hac vice*)
600 Campus Drive
Florham Park, NJ 07932
Telephone: (212) 248-3191
jeffrey.jacobson@faegredrinker.com
matthew.fedor@faegredrinker.com

Helen Marie MacMurray (0038782)
MAC MURRAY & SHUSTER, LLP
6530 W. Campus Oval, Suite 210
New Albany, OH 43054
Telephone: (614) 939-9955
Facsimile: (614) 939-9954
hmacmurray@mslawgroup.com

*Attorneys for Defendant*
*NeilMed Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby deposes and states that on June 26, 2023, he caused the foregoing to be electronically filed using the Court's CM/ECF system, which sends notification of such filing to all attorneys of record.

By:     /s/ Jeffrey S. Jacobson
        Jeffrey S. Jacobson

        *Attorneys for Defendant*
        *NeilMed Pharmaceuticals, Inc.*