UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**RUTH ANN COOPER, DPM,**

    **Plaintiff,**

    v.

**NEILMED PHARMACEUTICALS, INC.,**

    **Defendant.**

Case No. 1:16-cv-945

JUDGE DOUGLAS R. COLE

### OPINION AND ORDER

This now seven-year-old lawsuit stems from a single sheet of paper. In 2016, Plaintiff Dr. Ruth Ann Cooper, DPM, received a one-page fax. Defendant NeilMed Pharmaceuticals, Inc. (NeilMed) sent that fax, which Dr. Cooper claims was unsolicited. (Compl., Doc. 1, #3–4). The fax, addressed to "Physician and Office Staff," stated that NeilMed wished to send free samples of its pharmaceutical products to the recipient physician's office and asked that the recipient verify its address. (Doc. 1-1). Rather than tossing the fax in the trash, Dr. Cooper decided to file a putative class action against NeilMed under the Junk Fax Prevention Act of 2005 (JFPA), 47 U.S.C. § 227, for sending an unauthorized fax. (Doc. 1). After years of litigation, which included the Court's denial of class certification (*see* Doc. 77), the parties have now cross moved for summary judgment on Dr. Cooper's claim. (Docs. 81, 82). Beyond that, the parties have asked the Court to resolve the motions as if it were conducting a bench trial on the papers—with full authority to weigh the evidence and to adjudicate any disputed issues of fact. (Doc. 87); *see* Fed. R. Civ. P. 39(b). The Court

**GRANTS** that latter joint motion (Doc. 87). And because that means the Court will consider the summary judgment motions only for the persuasive value of their contents, and not as a basis for summary judgment, the Court **DENIES** both of those motions (Docs. 81, 82) as **MOOT**. Finally, after reviewing the record and weighing the evidence the parties have presented, the Court enters **JUDGMENT** in NeilMed's favor.

## BACKGROUND

Under Federal Rule of Civil Procedure 52(a)(1), whenever an action is "tried on the facts without a jury ... the court must find the facts specially and state its conclusions of law separately." Pursuant to that rule, the Court, after reviewing the record, finds the following facts:

**A.    Findings of Fact**

   —*The Fax*

1. On August 24, 2016, NeilMed sent a fax to Dr. Cooper's office. (Doc. 1-1). It stated, "Dear Physician and Office Staff, We would like to send you NeilMed product samples. Please fill out the form below to verify your address and confirmation for samples." (*Id.*). It described NeilMed products by stating, "NeilMed® Sinus Rinse™ and NeilMed® Baby Care, Ear Care, and First Aid devices have become an acceptable line of treatment for various self care for simple ailments." (*Id.*). It asked the recipient to "update your current address and contact information and fax back to us." (*Id.*). It also invited the recipient to opt out of further faxes by checking a "remove my name" box and returning the fax. (*Id.*). At the bottom of the fax, a footer read, "This fax was

received by GFI FaxMaker fax server. For more information, visit http://www.gfi.com." (*Id.*).

### —*Dr. Cooper's Office*

2. Plaintiff Dr. Ruth Ann Cooper (Dr. Cooper) is a podiatrist with a practice in Cincinnati, Ohio. (Doc. 64-1, #1276, 1297–98, 1303).

3. Randal Cooper is Dr. Cooper's business manager. (*Id.* at #1281–82).

4. Dr. Cooper's office employs around five office staff members at any one time, but has experienced staff turnover from 2011 to 2016. (*Id.* at #1295–96).

5. All of the employees who work and have worked for Dr. Cooper know the office fax number or have "easy access to look it up." (*Id.* at #1296–97).

6. Dr. Cooper's office also uses business cards that display the office fax number. Those business cards are available to all office employees, and the employees are not restricted in giving them out. (*Id.* at #1297–99).

7. Neither before nor after commencing this lawsuit did Dr. Cooper or Randal Cooper query any current or former staff members about those staffers' communications with NeilMed. (Doc. 63-1, #1262; Doc. 64-1, #1318).

8. During discovery, Randal Cooper stated that Dr. Cooper's office no longer possessed employment records from before 2013. (Doc. 64-1, #1279, 1296).

9. While this litigation was pending, Dr. Cooper's office returned the leased Sharp printer device to the lessor—the same device that printed the August 2016 fax. They did so without preserving any data or evidence pertaining to the print job. (*Id.* at #1294–95).

3

10. Dr. Cooper and Randal Cooper do not recall giving NeilMed consent to send the office advertisements by fax. (Doc. 63-1, #1263; Doc. 64-1, #1316, 1318, 1327–28).

—*NeilMed*

11. NeilMed manufactures and sells medical products, including nasal/sinus rinses and ear care products. (Doc. 61-1, #892–93).

12. NeilMed distributes free samples of its products to healthcare professionals upon their request. (Doc. 66-3, #1603–04).

13. One way that NeilMed communicates with doctors is by facsimile transmission. (*Id.* at #1603).

14. It is, and always has been, NeilMed's practice to send faxes regarding product samples or medical literature only to persons who expressly consented to receive them. (Doc. 66-2, #1582, 1597–99; Doc. 66-3, #1603–04).

15. NeilMed built an extensive database of doctors' fax numbers over 20 years through various methods:

- NeilMed sales representatives personally visit doctors' offices to distribute product samples to obtain their contact information, business cards, and consent to send faxes, and to assess their interest in receiving product samples and medical literature.

- Personal contacts of NeilMed's founder, Dr. Ketan Mehta, often provided their consent to him directly.

4

• NeilMed hosts exhibit booths at hundreds of tradeshows and medical conventions where it demonstrates its products and obtains attendees' contact information and consent to send faxes regarding product samples and medical literature.

• Customers also contact NeilMed directly by phone, fax, text message, regular mail, and email, and through NeilMed's website, to provide their contact information and to request to receive faxes regarding product samples and medical literature.

(Doc. 61-1, #917–20, 923–25; Doc. 66-2, #1582, 1597–99; Doc. 66-3, #1603–04).

16. NeilMed's database maintains records of health care professionals to whose offices NeilMed sent free samples upon request. (Doc. 66-3, #1604).

17. NeilMed never purchased lists of customer information to add to its customer database. (Doc. 62-1, #1097).

18. NeilMed's records confirm NeilMed sent product samples to Dr. Cooper's office on or about September 25, 2013. (Doc. 66-3, #1604).

19. NeilMed does not retain actual requests for samples, so it cannot determine the identity of the person from Dr. Cooper's office who requested the samples or by what means. (Doc. 61-1, #909, 922, 926; Doc. 62-1, #1082–83).

20. NeilMed's practice at the time was to send samples only to doctors' offices and only upon request. (Doc. 66-3, #1603–04).

5

21. NeilMed added Dr. Cooper's office fax number to its contact database in 2013. (Doc. 62-1, #1082; Doc. 66-3, #1604).

22. NeilMed could not determine who initially entered Dr. Cooper's fax number or other information in its database, nor why. (Doc. 61-1, #922, 926; Doc. 62-1, #1083).

**B.    Procedural History**

About one month after receiving the fax, Dr. Cooper decided to sue NeilMed alleging that by sending the fax NeilMed violated the JFPA, 47 U.S.C. § 227. (Doc. 1). That statute prohibits using "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). Dr. Cooper maintains that NeilMed's fax was unsolicited because NeilMed never obtained Dr. Cooper's "prior express invitation or permission" to send fax advertisements before sending the fax. (Doc. 1, #4); *see also* 47 U.S.C. § 227(a)(5).

NeilMed moved to dismiss arguing that the fax at issue was not an "advertisement" within the meaning of the JFPA. (Doc. 14). The judge then assigned to the matter denied the motion to dismiss holding that the fax plausibly constituted an advertisement. (Doc. 27, #211–16).

Dr. Cooper then moved to certify a class consisting of all "successful recipients of the P3990 Fax [(the fax at issue here)] and [sic] can be ascertained entirely from WestFax's [(a third-party fax service)] broadcast records." (Doc. 59, #496). After Dr. Cooper's motion was briefed, the matter was reassigned to the undersigned. (Doc. 71). The Court ultimately denied the motion for class certification holding that

6

individualized questions as to whether a fax recipient solicited the fax would predominate over any common issues of fact or law. (Doc. 77, #3565).

The parties then filed cross motions for summary judgment and corresponding responses.[1] (Docs. 81, 82, 84, 85). They subsequently filed a joint motion requesting that the Court conduct a bench trial on the papers. (Doc. 87).

## LEGAL STANDARD

When adjudicating disputes of fact and weighing evidence in a bench trial, the Court applies the Federal Rules of Evidence. *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 238 (5th Cir. 1988) ("The district court erred when it admitted this evidence on the ground that hearsay is admissible in a bench trial; it is not."); *Genosource, LLC v. SECURA Ins.*, No. 21-cv-86, 2023 WL 4700657, at *2 (N.D. Iowa Mar. 13, 2023); *see also* Fed. R. Evid. 1101. Based on its findings of fact, the Court enters judgment for whichever party is entitled to judgment as a matter of law.

---

[1] NeilMed also moved to strike Dr. Cooper's response to its motion for summary judgment, on the grounds that Dr. Cooper falsely claims NeilMed's interrogatories were unverified and unsigned and that Dr. Cooper violated this Court's standing orders by failing to file a list of undisputed facts. (Doc. 86). While NeilMed is correct on both counts, the Court finds it unnecessary to strike the response. The Court has relied on NeilMed's list of proposed undisputed facts and ultimately finds in its favor. So the Court **DENIES** NeilMed's Motion to Strike (Doc. 86) as **MOOT**.

That said, the Court notes its disappointment with Dr. Cooper's counsel. Counsel claimed, despite having email strings and evidence to the contrary, that NeilMed never signed or verified its response to Dr. Cooper's interrogatories. (Doc. 84, #3708, 3714). That goes beyond acceptable sparring over legal issues. NeilMed, in its motion to strike, provided email strings from some four years ago showing that, after NeilMed switched over its legal representation, new counsel provided signed verifications for both sets of interrogatories. (Docs. 86-1, 86-2). That means Dr. Cooper's counsel had every reason to know of NeilMed's proffered verifications and failed to ensure his accusations had evidentiary support. *See* Fed. R. Civ. P. 11(b). What's worse, when NeilMed emailed Dr. Cooper's counsel to notify him of the error in his motion, it appears he failed to respond. The Court expects better from members of the bar who practice here.

7

**LAW AND ANALYSIS**

The JFPA prohibits any person from using "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). To make out a claim under the statute, then, a plaintiff must have received an (1) unsolicited (2) advertisement (3) on a telephone facsimile machine. The parties dispute each element. The Court finds that Dr. Cooper (or someone in her office on her behalf) solicited facsimile advertisements from NeilMed. Because the solicitation issue disposes of the whole claim, the Court begins and ends its analysis there.

The JFPA does not prohibit all fax advertisements—only unsolicited ones. 47 U.S.C. § 227(b)(1)(C). A fax is unsolicited when it is "transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* at § 227(a)(5). However, the "voluntary provision of a [fax] number" to an entity constitutes express permission to receive faxes related to the reasons for which the number was provided. *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 619 (3rd Cir. 2020); *see Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 792–93 (9th Cir. 2018) (holding, in the analogous Telephone Consumer Protection Act context, that the provision of a phone number constitutes prior express consent to receive calls related to the reason the number was originally given). And permission, once given, is generally effective until revoked by the recipient. *See Advantage Healthcare, Ltd. v. DNA Diagnostics Ctr., Inc.*, No. 17-cv-9001, 2019 WL 3216026, at *3 & n.1 (N.D. Ill. July 17, 2019); Rules and Regulations Implementing the Telephone 71 Fed. Reg. 25967 at 25972 ("Express permission need only be secured once from the

8

consumer in order to send facsimile advertisements to that recipient until the consumer revokes such permission.").

Dr. Cooper, citing 71 Fed. Reg. 25967 at 25972, argues that NeilMed bears the burden of proof on this issue—that is, NeilMed must persuade the Court that it received prior permission to send the fax. (Doc. 81, #3662). NeilMed does not argue otherwise. They disagree, however, as to the appropriate standard of proof. Dr. Cooper contends that NeilMed must show that it obtained prior express permission by clear and convincing evidence. (Doc. 81, #3663). NeilMed believes that a preponderance of the evidence is the appropriate standard. (Doc. 85, #3731–32).

NeilMed is correct. The portion of the FCC rule cited by Dr. Cooper does not establish a clear and convincing evidence standard for all defendants asserting a prior-permission defense. Rather, the cited language deals with fax senders who assert a prior-permission defense *after* receiving an opt-out request from the recipient. (*See* Doc. 81, #3663 (citing 71 Fed. Reg. at 25,971–72)). The rule reads,

> [W]hen a consumer has made an opt-out request of the sender, it should be up to the sender to demonstrate that the consumer subsequently gave his express permission to receive faxes. … Senders that claim their facsimile advertisements are delivered based on the recipient's prior express permission must be prepared to provide clear and convincing evidence of the existence of such permission.

71 Fed. Reg. at 25,971. When read in context, the clear and convincing evidence standard suggested by the FCC applies only to claims in which the plaintiff affirmatively opted out from receiving faxes from the sender.

The on-point portion of the rule, the language dealing with the definition of prior permission applicable to all JFPA claims, is silent as to the standard of proof.

9

That portion simply reads, "[i]n the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was given." 71 Fed. Reg. at 25,972. In the absence of a statutory provision or agency regulation to the contrary, the Court reverts to the default standard of proof for a "civil case involving a monetary dispute between private parties"—a preponderance of the evidence. *Addington v. Texas*, 441 U.S. 418, 423 (1979); *Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*, 324 F. Supp. 3d 973, 978 (N.D. Ill. 2018) (citing *Addington* to hold, in a JFPA case, that a defendant need prove prior permission only by a preponderance of the evidence).

NeilMed has shown, by a preponderance of the evidence, that Dr. Cooper (or someone in her office on her behalf) solicited the fax. NeilMed first sent Dr. Cooper's office product samples in 2013. Facts ¶ 18. And per its business practice, NeilMed maintained Dr. Cooper's information in its customer database. Facts ¶¶ 16, 21. Included in the 2013 database entry was Dr. Cooper's fax number. Facts ¶ 21.

Combine those facts with NeilMed's sworn testimony—unrebutted by Dr. Cooper—describing a consistent business practice of sending product samples and faxes to only those physicians' offices that requested them. Facts ¶¶ 12–14, 16, 20. NeilMed's sworn testimony also supports the conclusion that its customer database was created organically over 20 years and was only ever populated entry by entry upon the request of its would-be customers. Facts ¶¶ 14–15, 20. NeilMed did not purchase customer lists to add fax numbers to its database. Facts ¶ 17.

Evidence of an organization's routine practice is both relevant and admissible, *see* Fed. R. Evid. 406, and in this case persuasive to the Court. *See* 71 Fed. Reg. at 25,972 (listing—as an encouraged method of proving prior permission to send faxes— established business practices). The Court finds that it is more likely than not that Dr. Cooper's information was in NeilMed's database because someone requested samples on her behalf. The presence of Dr. Cooper's fax number in NeilMed's database at that same time leads the Court to conclude that an individual voluntarily provided that number to NeilMed in the process of requesting those samples. Such voluntary provision constitutes express permission to receive faxes related to the original reason for providing the fax number—the receipt of product samples from NeilMed. *See Cephalon*, 954 F.3d at 619.

Dr. Cooper attacks the sufficiency of NeilMed's evidence on both factual and legal grounds. Factually, Dr. Cooper claims that testimony from NeilMed employees shows that NeilMed never had a practice of obtaining permission before sending faxes. (Doc. 84, #3709–11). She quotes the deposition of Srikanth Pai, NeilMed's database manager,

> Q.   Prior to the two broadcasts in August of 2016, did you or anyone at NeilMed call any of the doctors seeking permission to send Exhibit 1?
>
> …
>
> A.   I don't know.
>
> Q.   Do you have any information that anyone at NeilMed had called any of the doctors seeking permission to send Exhibit 1?
>
> …

11

A.    I don't know.

\*    \*    \*

Q.    Are you aware of any written policy to obtain permission from the doctors to agree to receive advertisements by fax?

…

A.    I am not aware of any.

(Doc. 62-1, #1123, 1139).[2] These questions ask only whether the database manager sought permission from customers already in the database to send the *specific* fax in question ("Exhibit 1" in the questions above, which is the fax Dr. Cooper received (Doc. 1-1)) as opposed to send faxes generally regarding a specific subject matter. This misses the entire point of NeilMed's argument. NeilMed does not argue that it obtained permission to send *each* individual fax campaign to every customer already in the database. Rather, NeilMed argues that it had previously obtained permission to send faxes to everyone listed in the database about specific topics—here, free samples of NeilMed products—and that the presence of those recipients' database entries is circumstantial proof that it obtained that permission. And once a sender obtains permission to send fax advertisements of a certain kind, that permission is effective until revoked. *See* 71 Fed. Reg. at 25,972.

---

[2] The above omissions from the transcripts are objections from defense counsel arguing that the questions either call for speculation by the deponent or are improper because the deponent lacks the foundation to answer. (Doc. 62-1, #1123, 1139). Although not necessary to the disposition, here, the Court notes that given the framing of the questions at issue, defense counsel's objections are well-taken.

Dr. Cooper's other examples of NeilMed's employee's testimony are much the same. (Doc. 84, #3710). Their testimony establishes only either that they do not know whether permission was sought for the specific August 24 fax at issue in this case or do not know the circumstances leading to Dr. Cooper's inclusion in NeilMed's database. (*Id.* at #3710–12). But NeilMed has already admitted it could not determine how Dr. Cooper's information appeared in the database, *see* Facts ¶ 22, which is why it's relying on its consistent business practice in the first place. All in all, none of the testimony highlighted by Dr. Cooper undercuts NeilMed's evidence of a consistent business practice of obtaining permission to send faxes before entering a customer's information in its database.

On the legal front, Dr. Cooper argues that "inferring permission from the mere presence of a fax number in a database is improper for the obvious reason that the [JFPA] requires permission to be 'express.'" (Doc. 84, #3712). She adds, "[c]onsent may not be inferred from the mere distribution or publication of a fax number, or the existence of a previous business relationship between an advertiser and the recipient." (*Id.* (quoting *Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 749 (Ohio Ct. C.P. Cuyahoga Cnty. 2003))). But once again, Dr. Cooper misunderstands NeilMed's argument. NeilMed is not arguing that the *permission* was implied (whether from conduct or circumstance) but that the Court should infer, from NeilMed's reliable circumstantial evidence, that it obtained *express* permission. Permission, under the JFPA, must of course be "express." 47 U.S.C. § 227(a)(5). But the *evidence* of that express permission may be circumstantial. And here, as already stated, the

13

circumstantial evidence establishes that it is more likely than not that Dr. Cooper (or someone in her office on her behalf) gave express permission to receive faxes from NeilMed, thereby resulting in her fax number's addition to NeilMed's database.

Not only does Dr. Cooper fail to undermine NeilMed's evidence of permission, but she also presents virtually none of her own. True, she and her business manager do not recall giving NeilMed permission to send faxes. Facts ¶ 10. But lack of recollection is not evidence—especially when you consider that giving someone permission to send you a fax is not exactly a momentous, life-changing event. *United States v. Mitchell*, No. 2:20-cr-20034, 2020 WL 6709559, *4 (W.D. Tenn. Nov. 16, 2020) ("His lack of recollection is a reflection of an expected loss of memory over the past two years, not an implication that the events to which [other witnesses] … testified did not occur as they stated."), *aff'd*, No. 21-5571, 2021 WL 5772534 (6th Cir. Dec. 6, 2021). And Randal Cooper admitted that other employees knew or could easily access the office fax number, so even if neither Cooper gave permission, others could have. Facts ¶ 5.

Dr. Cooper tries to address this latter point through Randal Cooper's claim that no employee would have provided the office fax number to NeilMed. (Doc. 84, #3713–14). But that assertion does not bear the indicia of reliability that accompanies an organization's settled business practice. *See, e.g.*, *Physicians Healthsource, Inc. v. Masimo Corp.*, No. SACV 14-00001, 2019 WL 8138043, at *14 (C.D. Cal. Nov. 21, 2019) (finding that a written policy requiring employees to ask those who requested fax numbers over the phone why the number was needed constituted competent

14

circumstantial evidence that no employee would have provided the fax number to receive the specific fax advertisements at issue). Unlike the policy in *Masimo*, Randal Cooper's assurances boil down to what is essentially an unfounded belief that the office employees would simply refuse to provide the fax number. When asked "how do you know that every employee would respond that way?" he replied, "I trust my employees just as they trust me." (Doc. 64-1, #1328). The Court declines to credit this assertion as a general business practice, and thus in turn refuses to credit Randal Cooper's speculation about how Dr. Cooper's office employees would have responded to a request from NeilMed for the office fax number. *See* Fed. R. Evid. 602 (requiring witnesses to have personal knowledge to testify).

On the whole, NeilMed has presented sworn testimony—by individuals with personal knowledge of the company's innerworkings—describing its consistent practice of sending product samples and faxes only to those who request them. Given the uncontroverted evidence that NeilMed sent Dr. Cooper's office product samples in 2013 and possessed her fax number at that time, the Court concludes that NeilMed received prior express permission to send a product-sample-related fax to Dr. Cooper's office. Accordingly, the fax NeilMed sent to Dr. Cooper's office on August 24, 2016, was not an "unsolicited advertisement" under the JFPA. And that means Dr. Cooper's JFPA claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the parties' Joint Motion Seeking Bench Determination of Any Disputed Facts (Doc. 87) and enters

**JUDGMENT** in NeilMed's favor on Dr. Cooper's claim. Because the Court grants judgment after a bench trial, it **DENIES** both motions for summary judgment (Docs. 81, 82) as **MOOT**. And the Court **DENIES** NeilMed's Motion to Strike (Doc. 86) as **MOOT**. The Court **DIRECTS** the Clerk to **ENTER JUDGMENT** consistent with this Opinion and Order and to **TERMINATE** this matter on the Court's docket.

    **SO ORDERED.**

February 6, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**